U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**
TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed December 21, 2006**                                          **United States Bankruptcy Judge**

---

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

In re:

| | | |
|---|---|---|
| HENCIE CONSULTING SERVICES, INC., | § | CASE NO. 03-39402-BJH-7 |
| Debtor. | § § | |

| | | |
|---|---|---|
| ROBERT NEWHOUSE, CHAPTER 7 TRUSTEE FOR THE ESTATE OF HENCIE CONSULTING SERVICES, INC. | § § § § | |
| Plaintiff, | § § | |
| v. | § § | ADVERSARY NO. 05-03645-BJH |
| TRIZEC PROPERTIES, INC. | § § § | |
| Defendant. | § | |

## **MEMORANDUM OPINION**

On November 6, 2006, this court[1] conducted a trial on the "*Trustee's First Amended Complaint to Avoid Preferential and Fraudulent Transfers*" filed by Robert Newhouse, Trustee

---

[1] This adversary was administered by Chief Judge Barbra J. Houser, but the trial was held in front of Judge Dennis Michael Lynn, sitting by designation.

for Hencie Consulting Services, Inc. (the "Trustee").  The court heard testimony from Christine L. Cole, a former employee of Trizec (defined below), and received into evidence excerpts from the deposition of Adil Kahn, sole director of Hencie (defined below) and exhibits identified as necessary below.  The court heard arguments from counsel for the Trustee and counsel for Trizec.  The court exercises its core jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(F).  This memorandum opinion embodies the court's findings of fact and conclusions of law.  Fed. R. Bankr. P. 7052.

## I.
## BACKGROUND

Hencie Consulting Services, Inc. ("Hencie" or the "Debtor") entered into an Office Lease Agreement dated October 24, 2001 (the "Lease") with TrizecHahn Tower Three Galleria Management, L.P. ("Trizec" or the "Defendant"), leasing 13,484 square feet of office space in Three Galleria Tower (the "Premises").

Hencie fell behind in its lease payments to Trizec, and by January 1, 2003, it owed over $300,000 of back rent to Trizec.  On May 23, 2003, Trizec locked Hencie out of the Premises for non-payment of rent.  On May 28, 2003, the parties agreed to terms to end the lockout, and Trizec allowed Hencie to re-enter the Premises.  On May 30, 2003, Hencie executed a promissory note in the amount of $100,000 payable to Trizec for unpaid rent due on or before December 31, 2002 (the "Promissory Note").  On June 25, 2003, the parties entered into their First Amendment to Office Lease Amendment (the "Lease Amendment"), in which Hencie agreed to pay Trizec $50,000 in exchange for Trizec's allowing Hencie to re-enter the Premises and for Trizec's agreement to forbear in efforts to collect back rent from Hencie. The terms of the Lease Amendment state that "[i]n consideration for a cash payment of $50,000… [Trizec] shall allow [Hencie] to re-enter the Premises and shall… release [Hencie] from all Rent due and

owing prior to December 31, 2002."[2]  The Lease Amendment also reiterated the terms of the Promissory Note and specified that Hencie was to provide new guarantees for payment of the rent.  On July 1, 2003, the Debtor paid Trizec $10,000 (the "Note Payment").  The Note Payment was in reduction of the Promissory Note.

On July 1, 2003, Hencie made a $12,259.50 payment to Trizec (the "July Rent Payment").  On July 2, 2003, Hencie effected wire transfers to Trizec totaling $50,000 (the "$50,000 Payment").  On or about August 7, 2003, Hencie made a $13,240.26 payment to Trizec (the "August Rent Payment").[3]  Hencie filed its chapter 7 petition for bankruptcy on September 13, 2003 and Plaintiff was appointed as its trustee and thereafter commenced this adversary proceeding.

On September 29, 2006, Judge Houser entered her "*Order Granting in Part and Denying in Part Trustee's Motion for Partial Summary Judgment*" (the "Summary Judgment Order").  In the Summary Judgment Order, the court determined that the $50,000 Payment constituted a preferential transfer under 11 U.S.C. § 547(b); however, the court denied the Trustee's request for summary judgment as to Trizec's affirmative defense that it had provided new value to Hencie.  Accordingly, the only issue now before the court is whether Trizec has an affirmative defense to the Trustee's avoidance of the $50,000 Payment pursuant to 11 U.S.C. § 547(c). [4]

---

[2]  Based on the record before the court, it appears that Hencie did not pay any rent to Trizec for the period January 1, 2003 to May 31, 2003.  The Lease Amendment provided that, subject to consideration provided by Hencie, Trizec would not purse collection of any rent due from Hencie from January 1, 2003 through May 31, 2003.

[3]  In ruling on a motion for summary judgment filed by Defendant, Judge Houser held that the July Rent Payment and the August Rent Payment constituted contemporaneous exchanges that are not avoidable under 11 U.S.C. § 547(b).

[4]  Though Judge Houser also left open the question of whether Trizec could assert a new value defense as to the Note Payment, Trizec conceded, prior to trial, that the Note Payment was recoverable by the Trustee.

## II.
## DISCUSSION

A.    Timing

At the outset, it is not entirely clear from Trizec's pleadings whether it is asserting an affirmative defense under section 547(c)(1) or (c)(4) (or both). However, under either scenario, Tizec's affirmative defense fails to comply with the section's timing limitations.

Section 547(c)(1) requires that the exchange of a transfer by a debtor for new value be "in fact" substantially contemporaneous.[5]  *See* 11 U.S.C. § 547(c)(1)(B).  In the case at bar, the $50,000 Payment was made 35 days *after* Hencie was allowed to re-enter the Premises. The determination of whether an exchange was in fact substantially contemporaneous is on a case-by-case analysis (*see* 3 W. Norton, Bankruptcy Law and Practice 2d § 57:13, at 57-75 (2005)). The court has reviewed a number of cases that have addressed whether transfers exchanged for new value were in fact substantially contemporaneous. *See, e.g, Ray v. Security Mut. Fin. Corp. (In re Arnett)*, 731 F.2d 358, 362 (6th Cir. 1984) (33 days held not to be contemporaneous); *Pine Top Ins. Co. v. Bank of America National Trust & Savings Ass'n*, 969 F.2d 321, 328 (7th Cir. 1992) (holding that two-to-three week delay in transfer of collateral in connection with issuance of secured standby letter of credit was substantially contemporaneous); *In re Bullion Reserve of North America*, 836 F.2d 1214 (9th Cir. 1988) (77 days not contemporaneous); *Telecash Indus., Inc. v. Universal Assets (In re Telecash Indus., Inc.)*, 104 B.R. 401, 404 (Bankr. D. Utah 1989) (holding that contemporaneous exchange not precluded as a matter of law when defendant perfected security interest more than 10 days after loan transaction, despite section 547(e)(2)); *Gropper v. Samuel Kunstler Textiles, Inc. (In re Fabric Buys of Jericho, Inc.)*, 22 B.R. 1013,

---

[5] Section 547(c)(1) also requires that (i) the creditor must have extended new value to the debtor and (ii) the parties must have intended that the new value and the reciprocal transfer by the debtor be contemporaneous. For purposes of this opinion, the court assumes that the parties *intended* the exchange to be contemporaneous.

1016 (Bankr. S.D.N.Y. 1982) (over 90 days; not contemporaneous); *Jahn v. First Tenn. Bank of Chattanooga (In re Burnette)*, 14 B.R. 795 (Bankr. E.D. Tenn. 1981) (20 days contemporaneous); *In re Hall,* 14 B.R. 186, 188 (Bankr. S.D. Fla. 1981) (90 days not contemporaneous); *Steinberg v. Nat'l Bank & Trust Co. (In re Independence Land Title Corp.)*, 9 B.R. 394, 396 (Bankr. N.D. Ill. 1981) (two months not contemporaneous); *In re Tucker Freight Lines, Inc.*, 62 B.R. 210 (Bankr. W.D. Mich. 1986) (seven weeks not contemporaneous).

Based on a review of these cases, the court concludes that the relevant exchanges in the case at bar were not in fact substantially contemporaneous. Because Congress included the modifier "substantially," the court recognizes that the transfers need not be simultaneous. However, in none of the above-referenced cases where transfers were held to be exchanged substantially contemporaneous, were the transfers exchanged more than one month apart. This seems to comport with Congress's view of what contemporaneous (for purposes of new value) means. Section 547(c)(3)—which provides that a trustee may not avoid a transfer that creates a security interest in property acquired by the debtor to the extent such security interest secures new value and is perfected on or before 30 days after the debtor receives possession of the property—has been amended twice since the enactment of the Bankruptcy Code in 1978. Originally, the perfection period was limited to 10 days but was then amended to 20 days to conform bankruptcy law practice to the practice in most states by granting purchase-money security lenders a 20-day period in which to perfect their security interests. HR Rep. 103-834, 103rd Cong., 2nd Sess 20 (Oct. 4, 1994); 140 Cong. Rec. H10767 (Oct. 4, 1994). Recently, the Bankruptcy Abuse Prevention and Consumer Protection Act expanded the perfection period to 30 days. Although not dispositive, the time limits established in this section shed light on what Congress believes to be a limit on timing of new value exchanges. The fact that Congress has

consciously amended this section twice and has not exceeded a 30-day period is instructive. Because the $50,000 Payment was made 35 days after Hencie was allowed to re-enter the Premises, the court finds that any advance of new value from Trizec to Hencie (to the extent there was any) was not in fact substantially contemporaneous with Hencie's transfer of $50,000 to Trizec.[6]

Unlike section 547(c)(3), the timing issue posed in the instant case under section 547(c)(4) is one of law and not of fact. Section 547(c)(4) specifies that the new value must be *after* the transfer by the debtor. *See also In re Ford*, 98 B.R. 669, 681-82 (Bankr. D. Vt. 1989). Trizec allowed Hencie to re-enter the Premises 35 days *before* Hencie made the $50,000 Payment to Trizec. Thus, section 547(c)(4) is on its face inapplicable to the $50,000 Payment. In fact, section 547(c)(4) is often referred to as the *subsequent* new value defense or the *subsequent* advance defense. *See, e.g., In re SGSM Acquisition Co., LLC*, 439 F.3d 233, 241 (5th Cir. 2006).

B.  New Value

As mentioned above, section 547(c)(1) provides, *inter alia*, that a trustee may not avoid a transfer to the extent that the creditor provided "new value" to the debtor. Section 547(c)(4) provides that a trustee in bankruptcy may not avoid a transfer "to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor—(A) not secured by an otherwise unavoidable security interest; and (B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor." *See also id*. New value is defined in section 547(a)(2) as

---

[6] The facts presented in a future case might warrant a determination that a transfer by a debtor separated from a creditor's extension of new value by more than 30 days was substantially contemporaneous. Despite the date of execution of the Lease Amendment, the court does not believe this case presents such facts.

> "money or money's worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law, including proceeds of such property, but does not include an obligation substituted for an existing obligation."

Thus, in determining whether a creditor provided the debtor with new value,[7] the focus must be whether the creditor provided money or money's worth in goods, services, new credit, or other valuable property.[8]

At first blush, it would appear that, by the plain meaning of section 547(a)(2),[9] Trizec did not give "new value" to Hencie. Prior to the transactions leading to the $50,000 Payment, Hencie was obligated to Trizec under a lease both prospectively and for back rent. Following the various transactions and on the eve of the $50,000 Payment, Hencie was obligated to Trizec on the Promissory Note and under the Lease as modified by the Lease Amendment. Thus, Hencie would seem to have exchanged "an obligation for an existing obligation," and the consideration provided by Trizec would therefore fall within the exception created by the final clause of section 547(a)(2).

Trizec insists, however, that (i) allowing Hencie to re-enter the Premises, (ii) reducing Hencie's monthly rent obligation from $26,969 to $12,259, and (iii) saving Hencie the costs

---

[7] In determining what section 547(a)(2) means, section 548(d)(2) is instructive. Section 548(d)(2) defines value for purposes of 548 as "property, or satisfaction or securing of a present or antecedent debt of the debtor…" 11 U.S.C. § 547(d)(2). By contrast, "new value" under 11 U.S.C. § 547(a)(2) has a narrower definition focusing on "money or money's worth…" Indeed the legislative history of section 547(a) provides that "…new value…[is] defined in [its] ordinary sense[], but [is] defined to avoid any confusion or uncertainty surrounding the term[]." HR Rep No. 595, 95th Cong, 1st Sess 372 (1977); S Rep No. 989, 95th Cong, 2d Sess 87 (1978). The court concludes that Congress intended for the meaning of value in section 547 to be something narrower than in other sections of the Bankruptcy Code, and the court should therefore focus its analysis in the instant case on whether Hencie received money or money's worth.

[8] Though the statute appears to limit new value to goods, services, creditors or "property" that is released property, courts have determined that a transfer of any valuable property satisfies section 547(a)(2).

[9] The court is required to apply the provisions of title 11 (the Bankruptcy Code) according to their plain meaning. *See Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004); *U.S. v. Ron Pair Enter., Inc.*, 489 U.S. 1, 6 (1989).

associated with moving out of the Premises and relocating its business constituted new value within the meaning of section 547(a)(2), and such new value was exchanged for the $50,000 Payment. For Trizec to prevail on this argument, one or more of these alleged items of value must constitute "money or money's worth in goods, services, or new credit," or other valuable property.[10]

Although there is substantial case law discussing new value, and despite the apparent specificity of the modifiers "goods, services, or new credit," there is no bright line test to determine what is money or money's worth. However, the new value given by the creditor must be to the debtor and must replenish the estate for the value removed by the transfers. *See Jones v. Society Bank & Trust (In re Riggs)*, 129 B.R. 494, 497 (Bankr. S.D. Ohio 1991). Thus, in analyzing section 547(a)(2), for purposes of the case at bar, rather than discuss what it is, it may be more helpful to discuss what new value is *not*, i.e. that which does not replenish the estate.

There are a number of cases where a court's focus on money or money's worth led to the conclusion that the creditor did not replenish the debtor's estate. *See, e.g., In re Nucorp Energy, Inc.*, 902 F.2d 729 (9th Cir. 1990) (holding that a transfer from the debtor to a creditor was not protected by the "new value" exception where the creditor released the right to file a statutory lien but the property subject to the potential lien was valueless at the time of the transfer); *In re Southmark Corp.,* 217 B.R. 181 (Bankr. N.D. Tex. 1997), *aff'd*, 242 B.R. 330 (N.D. Tex. 1999) (holding that a creditor's abandonment of a takeover effort and agreement to support the debtor's management selections was not new value); *Riggs*, 129 B.R. 494 (holding that a creditor's

---

[10] Trizec does not contend that repossession by Hencie of the personalty on the Premises upon re-entry is "new value" in that it constituted a "release . . . of property previously transferred. . . ." Because Trizec's entitlement to that personalty would be pursuant to a landlord's lien, and such a lien would be voidable under 11 U.S.C. § 545(3), repossession of the personalty would not be new value within the meaning of section 547(a)(2).

forbearance of its preexisting right to repossess collateral following debtor's default was not extension of "new value" because it did not serve to replenish the debtor's estate); *Peltz v. New Age Consulting Serv., Inc.*, 279 B.R. 99 (Bankr. D. Del. 2002) (holding that a release that a litigant executed in return for chapter 11 debtor's prepetition settlement payment was not "money or money's worth" and could not constitute "new value"); *Official Creditors Comm; v. Minden Exch. Bank & Trust Co. (In re Craig)*, 92 B.R. 394 (Bankr. D. Neb. 1998) (holding that the granting of a mortgage to a creditor in satisfaction of an unsecured guaranty obligation brought no new value to the debtor's estate). In *In re Bellanca Aircraft Corp.*, 850 F.2d 1275, 1280 (8th Cir. 1988), the court explained that new value is given in instances such as a debtor's purchase of supplies or payment of employee salaries—cases where something of concrete value is given by a party, which replenishes the estate, in exchange for money from a debtor.[11]

The lesson of the foregoing cases is that "money or money's worth" does not include such things as the elimination of rights against the debtor where the result is no more than a reduction in the debtor's unsecured debt. Given that preference law is generally intended to prevent a diminution of the value of a debtor's estate where the resulting benefit to the debtor is only a reduction in unsecured claims, this is perfectly logical. In the case at bar, Trizec, in executing the Lease Amendment, did not add an asset to the estate by excusing past-due rent or changing Debtor's obligations pertaining to the Premises. Rather, Trizec gave up part of the unsecured claim it might otherwise have asserted in Debtor's chapter 7 case pursuant to 11 U.S.C. § 502(g).

---

[11] The Supreme Court, in a different context, has also provided some guidance as to what money or money's worth is that supports this analysis. In *Norwest Bank Worthington v. Ahlers*, 485 U.S. 196, 205 (1988), the Supreme Court suggested that money or money's worth should be tangible and have a place in the asset column on the balance sheet.

Trizec's allowance of Hencie to re-enter the Premises at most constituted a forbearance of its right to retain possession of the Premises.  Like the creditor in *In re Duffy*, 3 B.R. 263 (Bankr. S.D.N.Y. 1980), Trizec forbore from its right to retain possession of the Premises and substituted instead its right to reclaim possession for nonpayment by its tenant at some future undetermined date.  *See also In re Rustia,* 20 B.R. 131, 134 (Bankr. S.D.N.Y. 1982) (holding that creditor's restoration of an available line of credit upon credit card holder's repayment was not equivalent to giving new value by actual extension of new credit where the debtor did not draw against the line).  Although Hencie arguably benefited from re-entry of the Premises, the re-entry had no tangible monetary value and re-entry did not replenish the estate.  The Trustee cannot sell re-entry of the Premises in the market and recover the $50,000 Payment.

Yet Trizec argues that the Lease Amendment and re-entry constitute new value and cites *In re Adelphia Automatic Sprinkler Co.*, 184 B.R. 224 (E.D. Pa. 1995) for support.  In *Adelphia*, the court held that a lease extension obtained by a debtor in exchange for payments of past due rent within the preference period constituted "new value," within the meaning of contemporaneous exchange for new value.  The court determined that the creation of an entirely new leasehold gave the debtor the benefit of being able to remain in the business premises for another eight months.[12]  This case is distinguishable because in the *Adelphia* case, the original leasehold had terminated by its own terms and the parties entered into an entirely new lease.  In the case at bar, the Lease was not set to expire until early 2005.  Had the Lease been terminated and the parties entered into a new lease, the new lease would arguably have been a new asset for the Debtor's estate.  Such is not the case here.  Nor did the Lease Amendment modify the term of the Lease.  There was no extension of Hencie's right to possession that would result in an

---

[12]   As is recognized in 11 U.S.C. § 365, which allows a trustee to assign (and so realize value upon) a leasehold, the tenancy may be itself a thing of value—i.e, money's worth.

increase of the value of the leasehold. There was no extension of Hencie's right to possession that would result in an increase of the value of the leasehold. Accordingly, the court cannot find that Trizec's allowance of Hencie to re-enter the Premises constitutes new value.

The reduction of rent does not constitute new value. At or about the time Hencie re-entered the Premises, Hencie and Trizec negotiated a reduction in rent with a concomitant reduction of leased space. This amounted to modification of an agreement between the parties. In fact, in consideration for entering into the modification, Hencie provided Trizec with, *inter alia*, a Promissory Note. Whatever Trizec gave up to enter into the modification constituted a settlement or a release. Both parties agreed that in exchange for the negotiated reduction of rent and space, Trizec forgave any past due rent that was not covered by the Promissory Note. In this context, a settlement or release cannot constitute new value because it is not money or money's worth. *See, e.g., In re Energy Co-op, Inc.*, 832 F.2d 997, 1003 (7th Cir. 1987). Moreover, the Lease Amendment providing for the reduced rent and leased space was a new obligation that was substituted for a prior obligation. Under the definition of "new value" in 11 U.S.C. § 547(a)(2), such substitution of obligation is not considered new value. Accordingly, the reduction of rent does not constitute new value.[13]

Finally, Trizec's argument that the re-entry of the Premises saved Hencie in excess of $6,000 for relocation costs, utility and maintenance fees, and therefore provided new value is unpersuasive. Trizec argues that these savings benefited the Debtor's creditors. However, as the *Ford* court noted, "[i]n determining whether a creditor has extended 'new value,'… the issue

---

[13] There is no evidence before the court as to whether the market rate for Hencie's space was greater or less than the rate charged Hencie under either the Lease or the Lease Amendment. If the record showed that the change in Hencie's rent resulted in a below-market or more below-market rate, the court might have a basis for finding that Hencie received "new value," in that the leasehold would have an increased value. On the other hand, if the Lease and Lease Amendment both provided for an above-market rate and the rent charged to Hencie under the Lease Amendment was merely "less above-market," such "benefit" would not support a finding of new value.

before the Court is whether there is an augmentation or material benefit to the debtor's estate." *Ford,* 98 B.R. 669, 682, quoting *Charisma Investment Company, N.V. v. Airport Systems, Inc. (In re Jet Florida System, Inc.),* 68 B.R. 596, 602 (S.D. Fla. 1986), *aff'd per curiam*, *Charisma Investment Company, N.V. v. Airport Systems, Inc. (In re Jet Florida System, Inc.), supra* 841 F.2d 1082 (11th Cir. 1988). Moreover, by any but the most twisted logic, the avoidance of moving costs is not something Trizec "gave"[14] to Debtor. Here, it is clear that any speculative savings that the Debtor enjoyed by not moving its business out of the Premises and into a new location is not an augmentation or material benefit to the Debtor's estate, and certainly had no tangible monetary value such that it could be construed as "money or money's worth." The most Trizec can claim is that, in part by reason of the $50,000 Payment, Debtor did not incur a contingent (and possibly unsecured) obligation to a moving company. It would require an unjudicially imagined stretch to find in any of the language of section 547 congressional intent to include such a speculative benefit to creditors within the statutory definition of "new value."

## IV.
## CONCLUSION

In the case at bar, Trizec received rental payments for the Premises — the July Rent Payment and the August Rent Payment. It was in exchange for relinquishing its claim for past-due rent that it received the Promissory Note (surely an "obligation substituted for an existing obligation"), return for reletting to a more worthy tenant of half the Premises, and finally, in satisfaction for such antecedent debt, and not for any new value, $50,000.

Counsel for the Trustee is directed to prepare and submit a final judgment consistent with this opinion and Judge Houser's prior orders. Costs for all proceedings in this adversary will be taxed to Trizec.

---

[14] 11 U.S.C. § 547(c)(4) requires that the "creditor *gave* new value to… the debtor" (emphasis added).